UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| PHILLIP RICHARD OHMER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 16-147-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL, * | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Phillip Ohmer and Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 13, 15] Ohmer contends that the Administrative Law Judge ("ALJ") assigned to his case erred by denying his claim for supplemental security income benefits ("SSI"). [Record No. 13] He requests that the decision be reversed and that a judgment be entered finding him disabled. [Record No. 13-1 at 14] Alternatively, Ohmer asks that his case be remanded for a new hearing before a different ALJ. [*Id.*] The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed. [Record No. 15]

For the reasons discussed below, the Commissioner's motion will be granted and the relief sought by Ohmer will be denied.

---

\*        As of January 23, 2017, Nance A. Berryhill is the Acting Commissioner of Social Security, and is substituted as the defendant in this action pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

-1-

## I.

On June 5, 2013, Ohmer filed an application for SSI under Title XVI of the Social Security Act ("the Act") alleging a disability beginning December 31, 2007. [Administrative Transcript, "TR.," at 153] The Social Security Administration ("SSA") denied his application initially and upon reconsideration. [Tr. at 63, 76] Ohmer pursued and exhausted his administrative remedies with an administrative hearing before an ALJ [Tr. at 28], a written decision from the ALJ [Tr. at 11], and review by the Appeals Council [Tr. at 1]. His case is now ripe for review pursuant to 42 U.S.C. § 1383(c)(3).

Ohmer was 50 years old at the time of his application for benefits and has a 9th grade education. [Tr. at 19, 23] He worked previously as a roofer, but stopped working in 1998 as the result of a motorcycle accident. [Tr. at 42] Ohmer resumed working for a few months in 2007 as a flagger. [Tr. at 41-42] At the time of the administrative hearing, Ohmer lived with his son and daughter-in-law. [Tr. at 35]

Ohmer contends that he is unable to work as the result of low back pain, difficulty reading and comprehending, and depression. [Tr. at 33] According to his testimony, the claimant is unable to drive because he cannot sit in one spot for a prolonged period. [Tr. at 36] Ohmer claims that he can stand for only 30 minutes at a time, because he begins to suffer pain in both legs as a result of his "substituting the weight." [*Id.*] Ohmer asserts that he can walk ten car lengths, but if he attempts to walk further, his entire leg become numbs. [*Id.*] He testified that his present symptoms stem from a 2010 back injury that occurred while he was changing a tire, but somewhat milder symptoms trace back to at least 2007. [Tr. at 37-40]

Ohmer also alleges that he suffers from anxiety, that he is easily aggravated, and that he has trouble sleeping. [Tr. at 49] He claims that his grandchildren "make [him] a nervous

wreck," and that he can do little more than help with the dishes. [Tr. at 50]  Ohmer testified that he rarely leaves home, but will sometimes walk across the street to visit a neighbor, and occasionally visits the supermarket if he is able to use an electric scooter for assistance.  [Tr. at 51]

Medical records from the Kentucky Department of Corrections indicate that Ohmer was treated with medication for chronic low back pain with neuropathic pain as far back as 2012.  [Tr. at 277]  He was prescribed Neurontin and Ibuprofen for back and leg pain. [Tr. at 16, 256-280, 296-313] Treatment records also indicate medication for GERD, urinary flow problems, and depression. [*Id.*]  In 2008 Ohmer discontinued treatment with Paxil which he was prescribed he was while going through a divorce.  [Tr. at 305]

On December 23, 2010, Ohmer was examined by consultative examiner G. Stephen Perry, ED.D., a licensed counseling psychologist.  [Tr. at 248-55]  Perry estimated Ohmer to be of below average to borderline cognitive ability and to have mild-to-moderate difficulties with concentration.  [Tr. at 250]  He found that Ohmer can communicate effectively, but has difficulty managing stress and getting along with others.  [Tr. at 254]  Perry diagnosed the claimant with depressive disorder, NOS; anxiety disorder, NOS with generalized anxiety and panic disorder symptoms; and personality disorder, NOS.  [*Id.*]  He assigned Ohmer a GAF score of 50 to 55.  [Tr. at 255]

A second psychological evaluation was performed in July 2013 by consultative examiner Christopher Catt, Psy.D.  [Tr. at 282-86]  Catt estimated Ohmer's IQ to be in the low average range.  [Tr. at 284]  He found a concrete ability for abstract thinking, but poor judgment and gaps in insight.  [*Id.*]  Catt diagnosed Ohmer with major depressive disorder recurrent-moderate, and assessed a GAF score of 56.  [Tr. at 285]  Ohmer's ability to

understand, remember, and carry out instructions regarding simple tasks was found to be not affected. [*Id.*] His ability to tolerate stress and the pressures of day-to-day employment was determined to be affected by moderate limitations. [*Id.*] Sustaining attention and concentration towards performance of simple repetitive tasks was found to be unaffected. [*Id.*] Finally, Ohmer's capacity to respond appropriately to supervision, co-workers, and work pressures was found to be affected by moderate limitations. [*Id.*]

Ohmer was examined by Dr. Naushad Haziq, M.D., an agency consultant in August 2013, for purposes of a physical evaluation. [Tr. 288-95] Haziq noted a dirt bike accident in 1998 as the source of the claimant's lower back pain, and a 2010 "snap in the back" while moving a heavy desk as an aggravating factor. [Tr. at 288] Ohmer described his pain as a continuous, dull, nagging, aching pain in the lumbar spine, which intermittently becomes sharp and radiates to his left lower extremities, leading to numbness and tingling. [*Id.*] Bending, stooping, sitting, lifting, carrying, standing, and walking aggravate the pain. [*Id.*] Haziq referenced a 2010 MRI, with the impression of "degenerative disc disease, primarily at L4-L5 and L5-S1. At L4-L5 there is narrowing of the left lateral recess with involvement of the left L5 nerve root and with left neural foraminal narrowing at L2-L3 and L5-S1." [*Id.*] A 2010 CT scan identified no acute fracture, but concurred otherwise with the MRI. [Tr. at 289] A lower extremity radiological study of a single level, performed for an ankle brachial index assessment, was within normal limits. [*Id.*]

Haziq characterized Ohmer as a normally-built male who appeared somewhat depressed. [Tr. at 290] He noted a slow cautious antalgic gait, and a mild limp while walking. [*Id.*] However, Ohmer did not need assistive devices or ambulatory aids, was able to sit and stand unassisted, rise from a step, and stepped up and down from the examination table. [*Id.*]

Ohmer appeared comfortable while seated and supine, and was able to speak and follow instructions without difficulty. [*Id.*] Examination of the claimant's cervical spine revealed no spinous process or muscular tenderness, and there was no evidence of paravertebral muscle spasm. [Tr. at 291]

Evaluation of his range of motion revealed no limitations. [*Id.*] The dorsolumbar spine revealed normal curvature, but Ohmer expressed pain and tenderness extending from T8 through S1, with mild limitation of movement. [Tr. at 292] Ohmer was able to stand on one leg at a time without difficulty, there was no leg length discrepancy, and the straight leg-raising test was 70 degrees bilaterally in supine and sitting positions. [*Id.*]

Haziq concluded that Ohmer suffered from low back pain, post remote trauma, and possible degenerative disc disease. [Tr. at 292] He found bilateral leg pain with absence of dorsalis pedis and posterior tibial pulses, and ruled out peripheral vascular disease. [*Id.*] High cholesterol was noted, together with a history of depression requiring medication. [*Id.*]

Treatment records provided by the claimant post-date the consultative evaluations. Ohmer was seen from July 2014 to January 2015 by Dr. William Brooks, M.D. [Tr. at 325-330] On July 3, 2014, Ohmer was examined for reports of chronic back pain. [Tr. at 330] Brooks was unable to substantiate Ohmer's complaints of pain. [*Id.*] He found no radiographic evidence, and noted that if a previous fracture of the L3 did occur "it is healed and certainly would not be expected to cause the symptoms with which he presents." [*Id.*] A CT scan from July 17, 2013 was reported normal. [Tr. at 329] However, Brooks gave Ohmer "the benefit of the doubt" and ordered testing. [Tr. at 330]

Ohmer's MRI was reviewed during a July 31, 2014, and showed the presence of degenerative disc disease at L4-L5 and L5-S1. [Tr. at 328] At L5-S1 a fragment of disc

compressing the nerve and providing anatomical/clinical correlation was noted. [*Id.*] Ohmer was ordered physical therapy at Baptist hospital in Corbin, and was to return within 2-3 months. [*Id.*] Surgery would be considered if physical therapy did not lead to improvements. [*Id.*]

The final medical record from Brooks is dated January 29, 2015 visit. [Tr. at 326] Brooks noted seeing Ohmer previously with some consideration for surgery, but "he did not follow through with the appropriate diagnostic studies and/or physical therapy." [*Id.*] He ordered confirmatory studies. [*Id.*] Ohmer testified during the administrative hearing that he had yet to proceed with the studies, and that Brooks would not consider any other modalities, including surgery, absent Ohmer's compliance. [Tr. at 17]

Finally, Ohmer visited Family Health Care Associates on January 6, 2015, "to establish [a] PCP." [Tr. 321] Ohmer complained of malaise and fatigue, *right* leg pain, saying his leg hurt when he walked and his feet stay cold, GERD, and allergies. [*Id.*] Tests were ordered, including a venous doppler of lower extremity. [Tr. at 324]

Radiology Reports from St. Elizabeth Hospital on March 3, 2015, conclude Ohmer's medical records. [Tr. at 331-333] The MRI impressions report degenerative disc changes at the lower 2 lumbar levels with facet atrophy. [Tr. at 332] Mild central left paracentral thecal sac indentation secondary to focal disc protrusion at L4-L5 is noted as creating some narrowing of the left lateral ramus which *could* encroach on the descending left L5 nerve root. [*Id.*] The neural foramen were patent, and facet anthropathy was prominent the lower 3 lumbar levels. [*Id.*]

ALJ Nicholas Walter issued a decision on April 29, 2015, finding that Ohmer has not been under a disability since June 5, 2013 (the date of his application). [Tr. at 24] ALJ Walter

found that Ohmer suffers from degenerative disc disease, personality disorder, anxiety, and affective disorder. [Tr. at 13] However, these impairments were not found to meet or equal a listed impairment. [*Id.*] Specifically, the ALJ found that the attendant signs, symptoms, and laboratory findings did not satisfy the severity requirements of listing 1.04—Disorders of the Spine. [*Id.*] The ALJ considered the following mental disorders: 12.04—Depressive, Bipolar and Related Disorders; 12.06—Anxiety and Obsessive-Compulsive Disorders; and 12.08—Personality and Impulse-Control Disorders. [*Id.*] The "paragraph B" criteria of each of the mental disorders require extreme limitation of one or marked limitation of two of the listed areas of mental functioning. The ALJ found that Ohmer has mild restrictions in daily living, but that nothing in the record suggested that he is incapable of performing the primary functions of daily living. [Tr. at 14]

Ohmer noted in a pre-hearing report that he "tries to help around the house and can prepare his own meals, such as simple recipes, soup, and sandwich." [Tr. at 14, 214] However, ALJ Walter found that claimant's leaving the majority of household chores to his daughter-in-law appeared to be more a matter of custom than necessity. [Tr. at 14] Ohmer also was able to manage his personal care and grooming help his nephew prepare for school. [*Id.*] Further, the claimant reported activities such as changing a tire and lifting a desk. [*Id.*]

The ALJ found moderate difficulties with social functioning. [Tr. at 14] He noted Ohmer's lack of close friends or social engagement, but also pointed to Ohmer's repeated incarceration as a possible cause for interfering with personal bonds. [*Id.*] ALJ Walter noted no reports of problems with fellow inmates during Ohmer's 12 years of incarceration, and medical records all supported Ohmer's ability to interact well in public domains such as medical facilities. [*Id.*]

Moderate difficulties were also noted regarding concentration, persistence, and pace. [Tr. at 14] The ALJ reported minimal recreational activities, such as watching television and listening to radio. [*Id.*] However, Ohmer reported whittling/woodworking as a hobby, which requires the ability to sustain a repetitive activity. [*Id.*] Ohmer also indicated that his nephews were teaching him how to use a computer, that he had no problems paying bills and counting change, and that he did not have difficulty paying attention or following spoken instructions. [*Id.*] For these reasons, including Ohmer's ability to understand the administrative hearing proceedings, the ALJ found Ohmer to have no more than moderate difficulties with concentration, persistence, or pace. [*Id.*]

Accordingly, the ALJ found that Ohmer's limitations do not meet the "paragraph B" criteria. [Tr. at 14] The ALJ also found that that Ohmer's limitations do not satisfy listing 12.04 and 12.06's "paragraph C" criteria. [*Id.*] As a result, the ALJ concluded that Ohmer does not meet a mental disorder listing.

ALJ Walter found that claimant's medically determinable impairments could reasonably be expected to cause the claimant's alleged symptoms. [Tr. at 15] However, he determined that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible[.]" [*Id.*] He found that Ohmer's credibility is eroded because of inconsistencies in the record (such as competing stories of the cause of the 2010 injury, reporting to some that it happened while lifting a desk, and to others while changing a tire), and noted that Ohmer's treatment has been conservative in nature. [Tr. at 21] Ohmer did not follow up with treatment and physical therapy, including after a drug screening was ordered. [*Id.*] Recent MRIs revealed only minor severity of encroachments of the spinal cord, and clinical examinations were generally unremarkable. [*Id.*] Finally, Ohmer had not

previously established treatment with a primary care source to obtain chronic pain medication, and neither had he visited the emergency room to seek pain treatment. [*Id.*] Ohmer reported numerous slip and fall or walk and fall incidents, but there is no evidence of acute injury or his seeking care afterwards. [*Id.*] And there are inconsistencies with reports of difficulty with ambulation. [*Id.*]

Ohmer performed light work while incarcerated, including cleaning microwaves and dust mopping floors. [Tr. at 43-44] Records from the halfway house where Ohmer was living suggest that he was working on a horse farm and recycling garbage. [Tr. at 16, 302] These activities, together with Ohmer's use of a top bunk, was viewed as further evidence that discredited his subjective allegations of pain. [Tr. at 22, 297]

## II.

Under the Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 416.920(b). Second, the claimant must show that he suffers from a severe impairment or a combination of impairments.

20 C.F.R. § 416.1520(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience.  20 C.F.R. § 416.920(d).  Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's residual functional activity ("RFC") and relevant past work to determine whether he can perform his past work.  If he can, he is not disabled.  20 C.F.R. § 416.920(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work.  If he cannot perform other work, the Commissioner will find the claimant disabled.  20 C.F.R. § 416.920(g).  "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'"  *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

A court reviewing a denial of Social Security benefits must only determine whether the ALJ's findings were supported by substantial evidence and whether the correct legal standards were applied.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).  The Commissioner's findings are conclusive if they are supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3).

**III**.

    **A.**    **The ALJ did not err in Discounting Ohmer's Credibility.**

Ohmer contends that the ALJ erroneously discounted his credibility. He argues that the medical evidence provides an objective medical reason for his leg and back pain. According to Ohmer, both psychological evaluations establish that he has a significant psychological diagnosis. He points to the radiology reports, and recounts the findings of psychological examiner Perry. Further, Ohmer notes that he was sent to live with another family as a child due to his trouble in school, had a history of fighting while growing up, and has been married three times.

A claimant's subjective complaints of pain or other symptoms cannot alone establish a disability. 20 C.F.R. § 416.929(a). An ALJ must consider inconsistencies in the evidence. 20 C.F.R. § 416.929(c)(4). And the absence of sufficient objective medical evidence makes credibility determinations particularly relevant. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "[T]his court will generally defer to the Commissioner's [credibility] assessment when it is supported by an adequate basis." *Id.* (citing *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 230 (6th Cir. 1990)).

The ALJ found that the objective medical evidence supports a finding of degenerative disc disease, but the evidence of symptoms was insufficient to meet listing 1.04—Disorders of the Spine. [Tr. at 13] Specifically, the credibility of Ohmer's pain allegations is eroded because of inconsistencies in the record (such as competing stories of the cause of the 2010 injury, reporting to some that it happened while lifting a desk, and to others while changing a tire), inconsistent reports of difficulty with ambulation, and the conservative nature of Ohmer's treatment. [Tr. at 21] Ohmer did not follow up with treatment and physical therapy, including

-11-

after a drug screening was ordered. [*Id.*] Ohmer reported numerous slip and fall or walk and fall incidents, but there is no evidence of acute injury or his seeking care afterwards. [*Id.*] He has never visited the emergency room for pain treatment, despite having no treating PCP. [Tr. at 21-22] Moreover, during incarceration, Ohmer performed light work, slept in a top bunk, and was working on a horse farm and recycling garbage. [Tr. at 22, 302]

Despite discrediting Ohmer's assertions of symptoms, the ALJ found Ohmer capable of light exertion work, contrary to the state agency's assessment of medium ability. [Tr. at 22] Regarding mental impairment, no treating, examining, or consulting expert indicated that Ohmer was subject to marked limitations. In fact, the ALJ's assessment of limitations on interactions with the general public and supervisors are consistent with those of psychological examiner Catt. The ALJ did not err in discounting Ohmer's credibility, and his decision regarding this issue is supported by substantial evidence.

**B.     No Bias was Exhibited by Failing to Present a Sedentary Hypothetical.**

Ohmer contends that the ALJ erred by not presenting a hypothetical to the vocational expert ("VE") regarding the sedentary level of exertion. He argues that the failure to present a sedentary hypothetical shows the ALJ's bias against awarding benefits. This claim is baseless.

To be sure, the ALJ acknowledged during the hearing that he would normally ask a hypothetical regarding sedentary, but was not doing so here. [Tr. at 60] But his reason was obvious—given the claimant's age and education, the sedentary level of exertion would present "a grid situation that would dictate a favorable outcome." [*Id.*] The ALJ considered the import of a sedentary finding, and a VE hypothetical was pointless.

-12-

### C.  The ALJ's Decision is Supported by Substantial Evidence.

Ohmer presents a conclusory argument that he should have been found incapable of even sedentary work, and that his RFC was improperly calculated. Of course, a mere sedentary finding would dictate a favorable outcome. And Ohmer offers no further explanation regarding why his RFC was improperly calculated. The Court need not explore issues raised in a "perfunctory manner, unaccompanied by some effort at developed argumentation." *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996). But as outlined above, the ALJ's calculation of Ohmer's RFC is supported by substantial evidence.

### IV.

The ALJ did not err in discounting Ohmer's credibility and his decision regarding this issue is supported by substantial evidence. Next, the ALJ's determination not to present a sedentary hypothetical to the Vocational Expert does not establish or demonstrate bias on his part. Finally, the ALJ's determination regarding Ohmer's RFC is supported by substantial evidence. Accordingly, it is hereby

**ORDERED** as follows:

1. Defendant Nancy A. Berryhill's Motion for Summary Judgment [Record No. 15] is **GRANTED**.

2. Plaintiff Phillip Ohmer's Motion for Summary Judgment [Record No. 13] is **DENIED**.

3. The administrative decision of the Administrative Law Judge will be **AFFIRMED** by a separate judgment entered this date.

This 20th day of March, 2017.



Signed By:
*Danny C. Reeves* DCR
United States District Judge